IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALISHA MARIE STONE,

    Plaintiff,

  v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 6:16-cv-01410-MC

OPINION AND ORDER

MCSHANE, Judge:

  Plaintiff Alisha M. Stone seeks judicial review of a final decision of the Acting Commissioner of the Social Security Administration (Commissioner) denying her application for Social Security Disability (SSD) insurance benefits. The Commissioner found that Ms. Stone was not disabled prior to December 31, 2011, the date last insured, according to the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c) (3). Because Ms. Stone's allegations, credited as true, establish that Ms. Stone is not able to work on a regular and continuing full-time basis, the ALJ's decision is REVERSED and this matter is REMANDED for immediate award of benefits.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Ms. Stone filed her SSD application on August 13, 2012, claiming a disability onset date of October 22, 2004. Tr. 30.[1] The claim was denied initially on November 2, 2012, and upon reconsideration on February 25, 2013. *Id*. A hearing was held before an Administrative Law Judge (ALJ) on October 7, 2014 and on October 31, 2014, the ALJ denied Plaintiff's claim. Tr. 27-41. The Appeals Council denied Ms. Michaud's request for a review of the ALJ's decision making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## STANDARD OF REVIEW

The Commissioner's decision will be affirmed if her decision meets all the legal requirements and her legal conclusions are supported by substantial evidence within the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). In determining whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which weakens the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The court may not substitute its judgment for that of the Commissioner's if an analysis of the evidence on the record as a whole can reasonably support either affirming or reversing the commissioner's decision. *Messmer v. Colvin*, 2016 WL 53397278 at *1 (D. Or. Sept.23, 2016). However, a reviewing court can only affirm the Commissioner's decision on grounds that the

---

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

Commissioner considered when making its decision. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

An error that is harmless is not sufficient to reverse an ALJ's decision. *Stout*, 454 F.3d at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

The ALJ is not required to discuss all the evidence presented, but must explain why any evidence of significant probative value has been rejected. *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995).

## **DISCUSSION**

According to the Social Security Act, a person is disabled if she is unable to perform substantial gainful activity (SGA) due to physical or mental impairments that are medically determinable. 42 U.S.C. § 423(d)(1)(A). The impairment must be such that it is expected to result in death, or has lasted or could last for a continuous period of not less than 12 months. *Id*. When determining whether an individual is disabled, the Social Security Administration applies a five step sequential evaluation process. 20 C.F.R. § 416.920. The burden of proof for the first four steps lies with the claimant and if she meets her burden at each of those steps, the burden of proof shifts to the Commissioner at step five. *Id.*

As a preliminary matter, the Plaintiff's Title II insurance lapsed on December 31, 2011. Tr. 32. A claimant seeking Title II disability insurance benefits must establish disability prior to the date last insured. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). "The burden of proof on this issue is on the claimant." *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). Therefore, Ms. Stone has the burden of establishing that between March 24, 2010, her alleged onset date, and December 31, 2011, her date last insured, she became unable to work for at least

12 continuous months due to any medically determinable physical or mental impairment(s). 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509.

At step one, the ALJ determined that Ms. Stone did not engage in any SGA since March 14, 2010, her disability onset date. Tr. 32. At step two, the ALJ concluded that Ms. Stone has severe impairments: residuals from cervical spine fusions, degenerative disc disease of the cervical spine and lumbar spine, and osteoarthritis. The ALJ further found that Ms. Stone suffers from a non-severe impairment; namely, affective disorder. *Id*.

## I. Step 3: Listing 1.04A

At step three of the sequential evaluation, the ALJ considers whether a claimant's impairment of combination of impairments meets or equals a listed impairment that presumptively demonstrates disability. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listings). Here, the ALJ found that Ms. Stone's impairments do not individually or combined meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 33. The ALJ found: "the evidence dated between March 14, 2010 and December 31, 2011 does not satisfy the criteria of section 1.04. Specifically, the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation during that period." Tr. 33.

Ms. Stone contends that the ALJ's decision at step 3 is not supported by substantial evidence and that the ALJ applied the incorrect legal standard. Pl.'s Br. 11, ECF No. 13. Ms. Stone argues that the ALJ simply asserted that Ms. Stone's impairments did not equal a Listing 1.04A, but otherwise did not address or explain why Ms. Stone's *combined* impairments do not equal Listing 1.04A. *Id*.

Listing 1.04A provides for presumptive disability when the claimant's medically determinable impairments satisfy each of the regulatory criteria. A failure to meet each of the specified medical criteria is a failure to show that a claimant's impairment or combination of impairments matches a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). In order to meet the listing regarding disorders of the spine, the claimant must show a disorder resulting in compromise of a nerve root (including the cauda equine) or the spinal cord, with: (A) evidence of nerve root compression characterized by:

> (1) neuro-anatomic distribution of pain,
> (2) limitation of motion of the spine,
> (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and
> (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, App. 1, Listings 1.04A

Here, the plaintiff has not established the third criteria, that sensory or reflex loss accompanied her motor loss. The October 8, 2010 treatment note shows plaintiff's sensation and reflexes to be normal: "3+ C5-6 bilaterally, Bilateral triceps is 2+, Intact sensation to light touch at bilateral C3-T2 levels." Tr. 502. Reflexes are generally normal when they are at 1+ to 3+, particularly provided they are symmetric on the right and left sides. 1 Attorneys Medical Deskbook 4th § 13:35 (updated 2016).

Additional treatment notes before, during, and after the relevant period likewise demonstrate normal sensation and reflex response: symmetric and brisk reflexes in September 2009 (Tr. 361); normal sensation in August 2010 (Tr. 689); grossly intact sensation in February 2011 (Tr. 334); 2+ reflexes in January 2012 (Tr. 382); normal deep tendon reflexes in July 2012 (Tr. 434); intact sensation in July, August and September 2012 (Tr. 403, 409, 417, 428-29, 434, 532); 2+ deep tendon reflexes and biceps tendon reflex in September 2013 (Tr. 698, 699, 735,

736). Separately, the medical notes also demonstrate plaintiff's normal strength during and after the relevant period: normal strength in August 2010 (Tr. 353, 689); strength at 5-/5 and 5/5 in October 2010 (Tr. 502); normal strength in July 2012 (Tr. 435); normal strength in August 2012 (Tr. 417, 429).

The ALJ correctly found that plaintiff's impairments did not meet Listing 1.04A. In addition, Ms. Stone's severe lumbar spine impairment, in combination with her severe cervical spine impairment, is not equal in severity to all the criteria of Listing 1.04A. The combination does not medically equate to a showing of motor loss accompanied by sensory or reflex loss. There has not been a showing of equivalence to each regulatory prong of the Listing.

## II. Dr. Cornwall's opinions

Ms. Stone argues that the ALJ improperly rejected an assessment and a letter provided by Dr. Cornwall in support of a showing of disability. First, Ms. Stone objects to the ALJ failure to consider Dr. Cornwall's September 18, 2014 "PHYSICAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT" in reaching the ALJ's determination. Tr. 724-30 and Tr. 309-315.

The second objection involves the evidence that Ms. Stone submitted to the Appeals Council after the ALJ issued his determination. Tr. 5. The newly submitted evidence is a post-decision letter from Dr. Cornwall dated March 23, 2016 (Tr. 306-307), as well as a 2016 addendum to Dr. Cornwall's 2014 assessment. The 2016 addendum clarifies that, despite being issued in September of 2014, the assessment was in fact retrospective to plaintiff's functioning as of May 2010. Tr. 308. The letter itself is from Dr. Cornwall where he summarizes in brief his findings of Ms. Stone's condition from October of 2005 to April of 2011. Despite this new information, the Appeals Council denied review. Tr. 1-2.

When the Appeals Council declines review, "the ALJ's decision becomes the final decision of the Commissioner" subject to substantial evidence review based on the record as a whole. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

**A. September 18, 2014 assessment**

At the time the ALJ issued his determination, the September 18, 2014 assessment appeared on its face to assess Ms. Stone's functioning as of September 18, 2014, the date Dr. Cornwall conducted and signed the assessment. Tr. 315. The 2014 assessment did not purport to relate back to the relevant period, which is March 24, 2010 to December 31, 2011. As a result, the ALJ reasonably read the September 18, 2014 assessment as evaluating Ms. Stone's functioning on the date the assessment was conducted. Ms. Stone's functioning in September 2014 is not significant probative evidence of Ms. Stone's functioning in 2011. Because, as the ALJ acknowledged, plaintiff has a progressive condition which has worsened over time, Ms. Stone's condition would be worse in 2014 than her condition in 2011. Because the Dr. Cornwall's 2014 assessment was not *significant probative evidence*, the ALJ did not err by not discussing assessment.

**B. 2016 addendum and the March 23, 2016 letter**

Ms. Stone argues that the 2016 addendum clarifies that the September 18, 2014 assessment was actually for "5/20/10." Pl.'s Br 6, ECF No. 13; Tr. 308. This assertion is

dubious. The addendum is a copy of the original first page from 2014 with handwritten notes. A box is newly checked off which reads: "RFC Assessment is For: Other(Specify):" – followed by handwriting: "5 | 2010" with further handwriting: "Addendum 3/16/16" signed by Dr. Cornwall.

The fact remains that the assessment form was filled out by Dr. Cornwall on September 18, 2014. If the ALJ accepts May 2010 as its intended assessment time period, it means Dr. Cornwall assessed Ms. Stone's functioning for the relevant time period three years and four months after the fact. Even if the ALJ had found the assessment to be significant probative evidence, which he did not, the lag in time is specific and legitimate reason for discounting the 2014 assessment. In light of the record as a whole, the 2016 addendum does not undermine the ALJ's decision to not give any weight or consideration to Dr. Cornwall's 2014 opinion.

In addition both the letter and updated assessment from Dr. Cornwall are less persuasive because Plaintiff obtained them only after the ALJ issued a determination adverse to her. Plaintiff's reliance on *Smith v. Bowen* is not instructive as to whether the ALJ here could discount the credibility of 2016 letter and addendum. *Smith* stands for the principle that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

That is not the issue. The issue here is whether an ALJ may discount or find less persuasive a medical evaluation provided after the ALJ issued a determination adverse to the claimant. Here, the ALJ discounted Dr. Cornwall's 2016 letter and addendum because they were issued after the ALJ had issued his adverse determination. The ALJ can properly consider the fact that a medical opinion is issued after the adverse determination. *See Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (holding that the agency's decision was support by substantial evidence despite a newly submitted doctor's opinion, which the court found "all the less

persuasive since it was obtained by Appellant only after the ALJ issue an adverse determination").

### III. Ms. Stone's subjective testimony

An ALJ's evaluation of a claimant's testimony of the limiting effects and severity of her symptoms involves a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). First, the ALJ must determine whether the claimant has produced objective medical evidence to demonstrate that her underlying impairment could reasonably be expected to cause the symptoms alleged. *Id.* If objective evidence exists, the ALJ can only reject the claimant's testimony if the record as a whole contains clear and convincing reasons for doing so. *Id.* When deciding what weight to give to the claimant's testimony regarding her symptoms, the ALJ may consider other evidence within the record including: claimant's prior work record, daily activities, testimony to medical providers, attitude towards treatment; medical source opinions; and the limiting effects of the symptoms. *Messmer,* 2016 WL 53397278 at * 3; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, although the ALJ determined that Ms. Stone's underlying impairments could reasonably cause some of her alleged symptoms, the ALJ also found that some of Ms. Stone's statements regarding her symptoms were not entirely credible. Tr. 35-37. The ALJ found that plaintiff had engaged in activities inconsistent with her alleged limitations, specifically noting plaintiff's child caregiving of her two-to-three year old even though she alleges an inability to lift a gallon of milk and an inability to crouch. Tr. 36, 74. The ALJ also found plaintiff to give inconsistent statements about the benefits of her treatment. Tr. 36. At the hearing, Ms. Stone alleged that her surgery did "not really" help at all and that her pain did not improve, but in his

surgery report, Dr. Fleming noted he obtained excellent correction and good alignment at C4-C5. Tr. 36; 65; 344. In July 2012, Ms. Stone reported that her surgery had helped. Tr. 431.

Ms. Stone's history of significant and chronic neck and back pain first begins in 2003 with a herniated disc in her neck. To treat her pain, Ms. Stone received multiple courses of physical therapy and medication treatment from 2003 to 2007. At some point around 2007, the doctors and Ms. Stone agreed that surgery would be a better approach. Tr. 259. Ms. Stone underwent her first surgery[2] on June 25, 2007. Tr. 291. Dr. Fleming described the surgery as an "[a]nterior decompression of the spinal cord and nerve roots at C5-C6 and C6-C7 with osteophytectomy at both levels. Anterior interbody fusion C5-C6 and C6-C7 with PEEK cages at both levels filled with locally harvested autologous bone graft. Anterior segmental plate fixation C5-C6 and C7." Tr. 496.

Ms. Stone worked 19 years as a hair stylist. In 2003, because of neck pain, she started working part time. She continued to do so after her first neck surgery in 2007. Ms. Stone last worked in February 2010. Tr. 54-55. Ms. Stone underwent a second cervical spine surgery on May 3, 2010. Tr. 344-45. This surgery was an "[a]nterior cervical diskectomy C4-C5 with decompression of spinal canal and osteophytectomy. Anterior interbody fusion using Synthes Zero-P cage and locally harvested autologous bone graft augmented with DBX graft." Tr. 344.

From 2003 to 2011, Ms. Stone, in addition to the 2 surgeries on her neck, underwent multiple injections, courses of physical therapy and pain management procedures to help with her symptoms. Her symptoms would wax and wane, though continue to progressively worsen. Ms. Stone may have felt better after a surgery or after a course of physical therapy when

---

[2] Ms. Stone actually had a prior surgery, a lumbar laminectomy, performed in 1997 or 1998. Tr. 394, 466, 470.

compared to how she felt just prior to the treatment, but the medical records demonstrate no long term improvement. Indeed, the record as a whole sadly charts a worsening condition.

Despite her condition, Ms. Stone attempted repeatedly to engage in common daily activities. These attempts were admirable and stemmed from her positive attitude and desire to engage in a full life. Those activities, however, would in turn exacerbate her pain symptoms and her condition continued to deteriorate.

After Ms. Stone's second surgery in May 2010, her husband would bathe their children and prepare the family dinners. Due to her symptoms, Ms. Stone was unable to get pans out, get the dishes out, cut up hard ingredients, i.e. vegetables, or do heavy stirring. Tr. 66. Doing those activities would immediately result in increased neck and arm pain. Tr. 67. For the two-and-a-half months following her surgery, Ms. Stone's cousin stayed and performed the household chores and child caregiving. Tr. 68. Ms. Stone was not able to help with the cooking. Tr. 68. She was unable to put laundry in and out of the washing machine or dryer, though she could take her time to fold the laundry. Tr. 67. She could walk, but only at a slow pace and then only for 20 to 30 minutes. The jolting from walking at a normal pace would cause more pain. Tr. 69. Pushing a stroller caused her pain. Tr. 70. Ms. Stone could only sit for about 45 minutes to an hour before needing to lie down. Tr. 70.

Ms. Stone cannot turn her neck from side-to-side. Tr. 72-73. Looking up is extremely difficult. Tr. 73. She drinks using a straw to avoid extending her head backwards. Tr. 73. Any extension of her arms also increased Ms. Stone's pain dramatically on her left side where she gets nerve pain down the left arm. It also increases her neck and shoulder pain, especially around her should blade. Tr. 73-74.

Ms. Stone's physical therapist noted that Ms. Stone was compliant with her home exercise program and motivated to improve, which is consistent with Ms. Stone demonstrated commitment to follow through on treatment and her desire to live a normal daily life. Tr. 305. While she was able to attain some relief of symptoms with orthopedic manual therapy, her symptoms would return within a matter of days. Ms. Stone was unable to dress or reach overhead without symptoms. Ms. Stone continued to display a marked loss of cervical mobility and significant upper limb neural tension. Tr. 305 Functional mobility continued to be severely limited with the inability to do many activities of daily living, such as dressing, bathing, and food preparation.

Defendant argues the ALJ found that Ms. Stone engaged in activities, i.e. child caregiving, inconsistent with her alleged limitations. Def.'s Br. 12, ECF No. 14; Tr. 36. Defendant points to several treatment notes to support the ALJ's findings. *Id*.

Those treatment notes are generic, and do not provide clear and convincing reason to discount Ms. Stone's allegation. For example, the February 2011 treatment note, cited by Defendant's Brief, reports that plaintiff "keeps busy with her 2 ½ year old at home." This is a generic notation, one which plaintiff made during a routine gynecological examination. In another treatment note cited by Defendant's Brief, Ms. Stone reported "taking care of her toddler" two weeks after her May 3, 2010 cervical spine surgery. Tr. 344-45; 355. The notation needs to be read within the context of the medical visit, which is a postoperative check evaluating Ms. Stone's recover from a serious surgery. More precisely, Ms. Stone reports "hav[ing] some difficultly with pain when she is being active and taking care of her toddler." Tr. 355. The word "active" is generic. What is clear from the record though is that this postoperative check-up occurred during a three-month period where Ms. Stone's cousin was staying with

plaintiff and was taking care of the household and childcare. Tr. 68. The evidence around this time period shows that Ms. Stone was not engaged in activities of daily living transferable to an 8-hour work day.

Quite frankly, it would be inconceivable that Ms. Stone would not make herculean attempts to engage with her children. That is what committed mothers do. This effort on her part should not form the basis of an opinion that Ms. Stone is less than credible when reporting her symptoms. A mother's stoic sacrifice is just that; a sacrifice.

What is also clear is that Ms. Stone's attempts to engage in normal daily activities resulted in worsening condition and pain. The medical note from April 13, 2009 (Tr. 468), eleven months prior to Ms. Stone's alleged onset date of March 14, 2010, demonstrates that Ms. Stone's pain increased when she attempted to engage in activity as minimal as bending over to pick up her kids. An October 6, 2010 physical therapy record shows that simple activities such as pushing a stroller up hill and washing dishes cause her increased symptoms of "upper trapezius/neck pain." Tr. 502. On August 28, 2012, Ms. Stone reports "staying active and able to interact with her children well," but also reports a pain at a 7 out of 10. Tr. 406. On September 20, 2012, Ms. Stone reported ongoing pain in the left neck area and left shoulder area. She presented for trigger point injections. "The symptom is exacerbated by exertion and activity." Tr. 540.

While the ALJ sought to discount the credibility of Ms. Stone's allegations by finding they were inconsistent with her activities of daily living (Tr. 36) the examples the ALJ gave were not clear and convincing reasons to discount Ms. Stone's allegations. The evidence does not show Plaintiff engaged in activities on a consistent and uninterrupted basis so as to be transferable to a work setting. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Rather, the

evidence shows that whenever Plaintiff attempted to re-engage in activities on a minimal level during the relevant period her condition worsened. Upon review, I find the record as a whole does not contain clear and convincing reasons for discounting some of Ms. Stone's testimony regarding her symptoms of alleged disability.

Because the ALJ's reasons for rejecting Ms. Stone's allegations are not clear and convincing, those allegations are to be credited as true. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). When credited as true, the allegations establish that Ms. Stone is not able to work on a regular and continuing full-time basis. *See* SSR 96-8p ('regular and continuing basis' means 8 hours a day for 5 days a week, or an equivalent work schedule.) Accordingly, she is entitled to disability benefits. *See*, 20 C.F.R. § 404.1545(b). Appropriate remedy is to remand for the payment of benefits. *Varney v. Secretary of HHS*, 859 F.2d 1396, 1401 (9th Cir. 1988).

## **CONCLUSION**

The Commissioner's decision is REVERSED. This matter is REMANDED for an immediate award of benefits.

IT IS SO ORDERED.

DATED this 1st day of December, 2017.

　　　　　　　　　　　　　　　　　____/s/Michael J. McShane_____
　　　　　　　　　　　　　　　　　　　　　Michael J. McShane
　　　　　　　　　　　　　　　　　　　United States District Judge